IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00872-MEH

CHASE MANUFACTURING, INC., d/b/a
THERMAL PIPE SHIELDS,

Plaintiff,

v.

JOHNS MANVILLE CORPORATION,

Defendant.

---

**DEFENDANT JOHNS MANVILLE'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF TO PRODUCE
ITS COMMUNICATIONS WITH FTC WITHHELD
AS PRIVILEGED OR PROTECTED (ECF 91)**

---

TPS's Response to Johns Manville's Motion to Compel concedes the Motion, and does not try to defend TPS's baseless privilege assertion over communications regarding Johns Manville between TPS and the Federal Trade Commission.  *See* ECF No. 91.  Remarkably, however, TPS still has not produced the documents at issue, which were requested on June 16, 2020—4-1/2 months ago—and already were the subject of an August 18, 2020 discovery hearing with the Court, during which TPS persisted in its unsupported claim of a joint defense/common interest privilege. TPS's gamesmanship is unwarranted, and is only prolonging and increasing the costs associated with discovery in this matter.

With less than four months remaining before the March 1, 2021 close of fact discovery, TPS's Response reflects a continuing pattern of obstruction by TPS, which is inconsistent with its obligation to cooperate in discovery as the Plaintiff in this lawsuit and increasing the burden and

1

costs imposed on Johns Manville.  The Court should grant the Motion to Compel, and order TPS to immediately produce the documents at issue, which are undisputedly not privileged.  In addition, because TPS persisted with its baseless privilege argument despite *at least eight* chances to change its position the Court should assess attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A).

**A.    TPS Had At Least Eight Opportunities To Produce The Documents At Issue And Avoid Or Resolve The Motion To Compel—No Further Conferral Was Required.**

The only argument TPS raises in its Response, is an inaccurate and frivolous objection to Johns Manville's alleged failure to confer before filing the Motion.  But the parties conferred about this document request and TPS's claims of privilege multiple times before the Motion was filed.  After a party has made its position on an issue readily apparent through multiple meet and confers and a Court conference, neither the Federal or Local Rules, nor this Court's Practice Standards, require a further effort to confer before a motion challenging that position is filed.  After multiple unsuccessful attempts to resolve this dispute informally—including at an August 18, 2020 status conference with the Court—Johns Manville's counsel did not need to ask TPS one more time to change its position on its baseless assertion of a privilege.

The culture among lawyers who practice in the District of Colorado, strongly encouraged by all the judges in this District, is to cooperate with reasonable discovery.  The judges in this Court do not promote a culture of gamesmanship or encourage lawyers to assert baseless objections to written discovery and wait to see if your adversary pushes back and negotiates successfully to eventually get you to withdraw baseless objections.  Such gamesmanship may be commonplace elsewhere, but not in this Court.  When lawyers practicing before this Court respond

to written discovery, there should be a good faith basis for each objection asserted and an attempt from the outset to identify reasonable compromises that address the needs of the case.

TPS had multiple opportunities to reasonably resolve the discovery issue raised in the Motion, yet it persisted at every stage in refusing to produce the requested documents, which it initially claimed were privileged (although it now concedes they are not).  The Motion recites in detail (ECF 91 at 2-4) the attempts to resolve this issue with TPS's counsel before Johns Manville filed its Motion.  TPS had at least eight opportunities to compromise and withdraw its unreasonable privilege objection and resolve this issue without a Court order.  It did not.  In fact, TPS produced a formal privilege log asserting that the requested communications were privileged or protected. After receipt of this log—and further discussion about it—Johns Manville was not required to ask TPS one more time if it had changed its mind about the assertion of privilege or protection to end the "impasse" TPS itself declared.  More specifically, the eight opportunities TPS had to reconsider its position before the filing of the Motion are:

1.      July 16, 2020:  Objection And Attempt to Rewrite Request.  TPS could have agreed to produce documents in response to RFP No. 17.  Instead, it asserted a boilerplate objection contending the request violates proportionality principles, and tried to rewrite the document request to avoid the plain import of the request.  *See* ECF 91-2 at 20.

2.      August 3, 2020:  No resolution after multiple calls/emails.  In multiple "meet and confer" telephone conversations, accompanied by emails, with Johns Manville's counsel in late July and early August 2020, TPS's counsel could have agreed to produce documents responsive to RFP No. 17.  Instead, they persisted with refusing to produce communications between TPS and "any government regulator," contending such documents constitute "privileged attorney work

product."  *See* ECF 91-3 at 4 (Aug. 3, 2020 email from TPS's counsel).

3.     <u>August 12, 2020 email exchange:  No resolution, and "impasse" declared by TPS</u> <u>after further conferral</u>.  In response to a further meet-and-confer discussion the previous week, on August 12, 2020 TPS's counsel relayed that she "conferred with our client" and TPS persisted with its refusal to produce its communications with the FTC ("TPS will not search for or produce [ ] email communications between its litigation counsel and the regulator") because "such communications are privileged attorney work product" and also not in TPS's possession.  ECF 91-4 at 2, 3.  TPS confirmed in that email that no further discussions would resolve the issue:  "If JM persists in seeking these documents, we are at an impasse and should raise the issue for the court . . . . ."  ECF 91-4 at 3.  (TPS did later withdraw the objection that the communications were not in its "possession.")

4.     <u>August 17, 2020:  No resolution after Johns Manville email to Court seeking</u> <u>assistance with discovery issue</u>.  Johns Manville raised its concern about TPS's continuing refusal to produce the communications with government regulators covered by RFP #17 based on an alleged privilege in an August 17, 2020 email to Judge Hegarty's chambers.  *See* Ex. F.  TPS persisted in its objection and still did not agree to produce its documents in response to that email.

5.     <u>August 18, 2020 discovery hearing: TPS maintains privilege claim; Court</u> <u>authorizes motion to compel</u>.  The Court addressed this issue at the August 18, 2020 discovery conference.  TPS still did not agree to produce the requested documents, maintaining its claim that TPS's communications with government regulators are privileged, this time relying on a joint defense/common interest privilege.  Transcript at 80:16-86:6 (Aug. 18, 2020).  In the same discovery hearing, with respect to TPS's separate (now-resolved) assertion that its counsel's

communications with third-party subpoena recipients (insulation distributors) are privileged, the Court explained to TPS's counsel: "Any communication between TPS and anybody else is just not privileged. I don't know what you guys do in New York, but in federal court a privilege is within a party. Communications within a party. But once you expose it to a nonparty, it's not privileged." Transcript at 69:10-14. Nevertheless, TPS contended its communications at issue here with government regulators are privileged: "Your Honor, our position is that they are privileged . . . . " Transcript at 81:25-82:1.[1] At the conclusion of that discussion, the Court directed TPS to serve a privilege log within 30 days and stated to Johns Manville's counsel: **"Mr. Kerwin, then if you believe that there is no such privilege, you do have authority to go ahead and file a motion to compel."** Transcript at 86:2-6 (emphasis added).

Reminiscent of the convoluted legal maneuvering in Charles Dickens' *Bleak House*, TPS now construes the Court's August 18, 2020 Order authorizing the current Motion to Compel as requiring yet another round of fruitless negotiations with TPS, including a further discovery dispute email to Judge Hegarty and a further discovery conference with the Court. ECF 98 at 2. That is not so.

6.    September 17, 2020: "Attorneys Eyes Only" Privilege Log: TPS's gamesmanship continued when—30 days after the August 18 Court hearing—TPS produced a privilege log but designated the log itself as "Confidential—Attorneys' Eyes Only." If—as TPS concedes—the communications are not privileged, it is unclear why TPS logged them.

Counsel for Johns Manville objected to this designation, explaining why the privilege log

---

[1] TPS did not preserve an argument at that hearing that the documents are not relevant. Transcript at 80:16-86:6.

did not meet the definition of an Attorneys' Eyes Only document under either the Federal Rules or the Stipulated Protective Order and how it made it more difficult for Johns Manville's counsel to discuss that log with the Court as a public (vs. restricted) document.  Counsel for TPS eventually agreed to remove this designation from the privilege log, but noted "[t]his is not an admission that TPS agrees that the log does not qualify as Attorneys' Eyes Only."

In this exchange, TPS could have voluntarily withdrawn its privilege assertion then, or proposed the "no waiver" compromise it now suggests in its Response, ECF 98 at 3.  But instead TPS persisted with its privilege argument and refused to produce the subject documents.

7.      October 1-2, 2020 email exchange:  TPS persists with privilege claim:  In this October 1-2, 2020 email exchange, TPS again could have withdrawn its privilege assertion or proposed its "no waiver" compromise, but it did not do so.  Counsel for Johns Manville, in fact, specifically asked TPS why it had not provided any alleged common interest agreement with the FTC.  TPS persisted with its privilege assertion, contending the requisite joint defense/common interest agreement "is an oral one."  See ECF 91-5 at 2.

8.      October 16, 2020:  TPS did not contact Johns Manville's counsel after motion was filed:  If TPS was, in fact, as shocked at the receipt of the Motion as it claims to be, its counsel could have quickly reached out to counsel for Johns Manville upon receipt of the Motion, agreeing to produce the documents if Johns Manville withdrew the Motion.  TPS did not make any such effort.

* * * * *

Finally, TPS's Response misleadingly refers to a meet-and-confer call scheduled for October 14, 2020.  ECF 98 at 3.  As the Court is aware, Johns Manville has long requested that

TPS advise whether it will be using ESI search terms and, if so, what terms it proposes.  Although it initially promised to provide those terms shortly after the August 18, 2020 status conference—and despite repeated requests from Johns Manville's counsel—TPS did not propose such terms until September 30, 2020 (and the terms proposed were largely just copied from the terms Johns Manville had agreed to run over its documents).  *See* Ex. H.  On October 6, 2020, Johns Manville provided an amended list of ESI search terms and asked TPS to meet and confer about it. Ex. H.  But the earliest date that any of TPS's three lawyers could be available to discuss this amended list was not until Wednesday, October 14, 2020—more than one week later—despite a request to speak sooner.  *Id.*  Then, just one day before the October 14 call was set to take place, counsel for TPS sent an email indicating TPS would agree to run all of Johns Manville's proposed terms and *TPS's counsel proposed* cancelling the meet and confer call.  *See* Ex. I (Oct. 13, 2020 Shear email: "TPS agrees to run the search terms that JM proposed in its email dated October 6.  In light of this, **please let us know whether you still want to keep tomorrow's meet-and-confer on the calendar**.") (emphasis added).

Given this history of at least eight attempts and opportunities for TPS to resolve the issue, TPS's contention that Johns Manville failed to meaningfully meet and confer before filing its Motion—or failed to comply with this Court's Local Rules or Judge Hegarty's discovery procedures—is frivolous.  TPS's contention to the contrary in its Response is misleading and dishonest.

Therefore this is an appropriate instance to charge TPS with reimbursing Johns Manville's attorney's fees incurred to prepare the Motion to Compel.  *See* Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was

filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").  None of the three exceptions to awarding fees under Rule 37(a)(5)(A) apply here:  i) Johns Manville filed the Motion only after attempting in good faith (multiple times) to obtain the discovery without court action; ii) TPS's privilege objection was not substantially justified—its Response (ECF 98) makes no attempt to defend that objection); and iii) there are no circumstances making such a fee award unjust—indeed TPS's Response persists with an inaccurate justification of its actions.

**B.**     **TPS Has Not Been Cooperating With Its Discovery Obligations.**

Unfortunately, TPS's lack of cooperation with the document request covered by the current Motion exposes a much larger problem here.  TPS's counsel have been stalling for months with production of basic custodial ESI discovery, apparently trying to run down the discovery clock and make it difficult for Johns Manville to complete necessary depositions before the March 1, 2021 fact discovery cutoff.

Well before the close of discovery, Johns Manville needs to take depositions of TPS witnesses including its President, David Shong, followed by depositions of representatives of the insulation distributors who TPS (inaccurately) contends will not purchase its calsil insulation. Before taking those depositions, it is critical for Johns Manville's counsel first to obtain all ESI (emails and other communications) from TPS documenting its alleged inability to fairly compete in the U.S. market for the sale of its calsil and other industrial insulation.

As of the date of this Reply, TPS still has not produced any ESI.[2]  When Mr. Kerwin spoke with Ms. Shear yesterday, November 3, 2020, in response to her inquiry about attending the November 9, 2020 summary judgment hearing—he asked when TPS will produce the ESI Johns Manville requested in its June 16 2020 document requests and noted the impending March 1, 2021 fact discovery cutoff and the need to take depositions of TPS and distributor witnesses.  Ms. Shear could not commit to any production date, noting the alleged complexity of TPS completing the searches and the "QC" required and promising a vague rolling production.

TPS's obfuscation and stalling with its ESI production is apparent from its lack of diligence since the summer of 2020 just agreeing to basic ESI custodians and search terms for production of TPS ESI files:

- Spring/Summer 2020:  During numerous discovery conversations with TPS's counsel during the spring and early summer of 2020 to agree on Johns Manville's ESI custodians and appropriate search terms, TPS initially declined to agree to produce ESI for all six of the TPS employees listed in its Rule 26(a)(1) disclosure, and declined to agree to use any ESI search terms for producing its ESI—suggesting its document reviewers would just manually review all ESI to identify responsive documents.

  - Meanwhile, Johns Manville agreed to produce ESI for 10 custodians and has produced more than 15 gigabytes of ESI containing highly confidential/competitively sensitive information responsive to TPS's document requests.

- August 12, 2020:  TPS agreed to six custodians but no search terms:  On August 12, 2020, TPS's counsel finally agreed to produce ESI for all six of the current and former TPS employees listed in its June 4, 2019 Rule 26(a)(1) disclosures.  *See* ECF 91-4 at 3 (TPS Aug. 12, 2020 email under heading "Custodians").

  - Nevertheless, TPS persisted in refusing to agree to use any ESI search terms or discuss specific search terms for producing its ESI.  *See* ECF 91-4 at 4 (TPS Aug. 12, 2020 email under heading "Search Terms"):  TPS stated:  "We are still

---

[2]  On August 17, 2020, just before the August 18, 2020 discovery hearing, to avoid the implication that it still had not produced any documents to date, TPS produced 1,424 pages of documents including various product order forms and calsil sales data that undermines some of its assertions.

considering whether to employ search terms and as I said to you, we will discuss potential search terms with you if we decide to use them.  We cannot agree to make that decision this week because you have unilaterally chosen to impose a deadline on us."

- August 25, 2020:  TPS agreed to use ESI search terms, but still did not propose any. Nearly two weeks later, TPS agreed to use ESI search terms but declined to suggest such terms, citing "upcoming vacations."  TPS stated its proposed ESI terms should include "all the terms that JM is running" and asked Johns Manville's counsel to relay a list of those terms, even though those terms had been negotiated at length in written communications with TPS's counsel during the spring of 2020).

  - *See* Ex. G (TPS Aug,. 25, 2020 email):  "TPS has decided to use search terms to identify potentially responsive documents for manual review.  We are working on compiling a list of search terms and will consult with you and Greg once we have developed a preliminary list.  (Certain upcoming vacations may impact our availability to have that discussion next week, but we will reach out to propose some times.)  In the meantime, we want to be sure that, at a minimum, our list of search strings includes all the terms that JM is running and that our strings are structured in the same way.  This will ensure at least that we gather a parallel set of documents for review.  Would you please send me the list of search strings that JM is using so that we can be sure to incorporate them into our own protocol?"

- September 23, 2020:  One Month Later:  Still No TPS proposed ESI search term list: During August and September 2020, TPS continued to "slow-walk" the process of TPS's ESI production.  In emails dated September 18, 2020 and September 23, 2020, Johns Manville's counsel followed up on TPS's August 25, 2020 email promising to send a list of TPS's proposed search terms.

  - Ms. Shear responded on September 23, 2020 stating:  "We will be in touch about search terms in the next few days."  *See* Ex. H (email exchange of Sept. 18-23 2020).

- September 30, 2020:  TPS proposed ESI search terms nearly identical to those Johns Manville used to search its files:  One week later, TPS finally proposed ESI search terms, offering terms nearly identical to those Johns Manville had used to search its files.  While it was easy for TPS to suggest using those ESI search terms, those terms do not make sense for searching the files of TPS, which does not manufacture insulation and does not use the Johns Manville insulation brand names in its internal documents.

  - *See* Ex. H (Sept. 30, 2020 Shear email).

- October 6, 2020:  Johns Manville's counsel sent ESI search term list to TPS for search of files.  In response to TPS's inapposite search term list, on October 6, 2020 Johns Manville's counsel send a comprehensive alternative search term list to TPS's counsel, noting how the search terms correlated to Johns Manville's document requests.  *See* Ex. H & H-1 (Oct. 6, 2020 Kostecka email and chart).

- In response, and continuing to slow-walk the process, TPS's counsel requested a "redline" to compare "there proposed terms to ours" and indicating the earliest TPS could discuss these alternative terms would be October 14, 2020. *See* Ex. H (Oct. 6, 2020 Shear email).

- On October 7, 2020, Johns Manville's counsel sent the requested redline and asked to speak sooner than Wednesday, October 14, 2020, offering even to be available before or after business hours if there was a convenient time. TPS's counsel declined: "Unfortunately, at this time, we are not available before Wednesday. We will let you know if our calendars free up before then." Ex. H (Oct. 7, 2020 Shear email).

- <u>October 13, 2020:  TPS accepts Johns Manville's proposed ESI search terms; declines to state when ESI production will begin.</u>":  On October 13, 2020 TPS agreed to use the ESI search term list Johns Manville's counsel proposed, but still declined to state when it would start producing ESI: "Yes, the collection and review process is underway. We do not yet know when we intend to make our first rolling production of custodial data." Ex. I (October 13, 2020 Shear email—redacted for communication concerning restricted court document).

Therefore, Johns Manville requests that the Court:

a.      enter an order granting the Motion to Compel and directing TPS to immediately produce the documents responsive to RFP No. 17 that are the subject of that Motion, and

b.      also order under Fed. R. Civ. P. 37(a)(5)(A) that TPS must pay the reasonable attorney's fees incurred by Johns Manville's counsel to prepare the Motion to Compel.

In addition, Johns Manville's counsel will ask to discuss TPS's ongoing delays with producing ESI and other responsive information, including its Rule 26(a)(1) disclosures, at the November 9, 2020 summary judgment hearing, if the Court has time.

Dated:    November 4, 2020.

Respectfully submitted,

  *s/ Gregory J. Kerwin*
Gregory J. Kerwin
Ryan Bergsieker
Allison Kostecka
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:    303.298.5700
Email:  GKerwin@gibsondunn.com
RBergsieker@gibsondunn.com
AKostecka@gibsondunn.com

*Attorneys for Defendant Johns Manville*
*Corporation*

Exhibits

F.  August 18, 2020 email to Judge Hegarty's chambers listing discovery issues

G.  August 25-26, 2020 email exchange concerning proposed TPS ESI search terms

H.  September 18-October 7, 2020 email exchange concerning TPS ESI search terms

     H-1:  Chart of TPS ESI search terms attached to October 6, 2020 email

I.  October 13, 2020 email exchange concerning TPS ESI search terms

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2020, I electronically filed "Defendant Johns Manville's Reply Brief In Support Of Its Motion To Compel Plaintiff To Produce Its Communications With FTC Withheld As Privileged Or Protected (ECF 91)" with the Clerk of Court using the CM/ECF system.  A copy of this document was served on the following counsel of record for Plaintiff through the Court's ECF system:

Alexandra H. Shear
Jarod M. Bona
Luke Hasskamp
Bona Law PC
375 Park Avenue, Suite 2607
New York, NY   10152
Emails:  alex.shear@bonalawpc.com
jarod.bona@bonalawpc.com
luke.hasskamp@bonalawpc.com


Geoffrey N. Blue
7350 E Progress Pl., Suite 100
Greenwood Village, CO 80111
Email:  gblue@gbluelaw.com


                              *s/ Loretta Howard*
                              Loretta Howard