**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**DISMISSING ALL PLAINTIFF'S CLAIMS**
**February 1, 2022**
**Civil Action No. 1:19-cv-00872-MEH**

# Defendant's Exhibit 3-D
# Chad Meyer 07/27/21-Excerpts

```
 1              FOR THE DISTRICT OF COLORADO

 2    CHASE MANUFACTURING, INC.,    )
      d/b/a THERMAL PIPE SHIELDS,   )
 3                                  )
               Plaintiff,           )
 4                                  )   No.
        vs.                         )   1:19-cv-00872-MEH
 5                                  )
      JOHNS MANVILLE CORPORATION,   )
 6                                  )
               Defendant.
 7              The videotaped video

 8    teleconference discovery deposition of CHAD

 9    MEYER, called by the Plaintiff, for examination,

10    pursuant to notice, taken remotely before LAURA

11    MUKAHIRN, CSR, RPR, CRR, within and for the

12    County of Cook and State of Illinois, on

13    July 27, 2021, scheduled to commence at 8:00

14    o'clock a.m. CDT.
```

```
 1    A P P E A R A N C E S:

 2       BONA LAW P.C.
         BY:  MS. ALEX SHEAR
 3            MR. LUKE HASSKAMP
         alex.shear@bonalawpc.com
 4       luke.hasskamp@bonalawpc.com
         1330 Avenue of the Americas
 5       Suite 23A
         New York, New York 10019
 6       (212)634-6861
              Appeared on behalf of the Plaintiff;
 7
         GIBSON DUNN
 8       BY:  MS. ALLISON KOSTECKA
              MR. GREGORY KERWIN
 9       akostecka@gibsondunn.com
         gkerwin@gibsondunn.com
10       1801 California Street
         Suite 4200
11       Denver, Colorado 80202
         (303)298-5739
12            Appeared on behalf of the Defendant.

13

      ALSO PRESENT:
14
      BRIAN ZALL - Johns Manville Corporation
15

16

17

18

19

20

21

22

23

24

25
```

```
                        I N D E X

   Examinations                                      Page

Examination                                             7
By Ms. Shear


Examination                                           222
By Ms. Kostecka


                       E X H I B I T S
   No.                                               Page


   Meyer Deposition Exhibit No. 68                     11
   Meyer Deposition Exhibit No. 69                     28
   Meyer Deposition Exhibit No. 70                     51
   Meyer Deposition Exhibit No. 71                     62
   Meyer Deposition Exhibit No. 72                     65
   Meyer Deposition Exhibit No. 73                     73
   Meyer Deposition Exhibit No. 74                     82
   Meyer Deposition Exhibit No. 75                     89
   Meyer Deposition Exhibit No. 76                     94
   Meyer Deposition Exhibit No. 77                    103
   Meyer Deposition Exhibit No. 78                    109
   Meyer Deposition Exhibit No. 79                    115
   Meyer Deposition Exhibit No. 80                    122
   Meyer Deposition Exhibit No. 81                    125
   Meyer Deposition Exhibit No. 82                    141
   Meyer Deposition Exhibit No. 83                    146
   Meyer Deposition Exhibit No. 84                    149
```

```
 1   E X H I B I T S:  (Continued)

 2   Meyer Deposition Exhibit No. 85                    159

 3   Meyer Deposition Exhibit No. 86                    163

 4   Meyer Deposition Exhibit No. 87                    173

 5   Meyer Deposition Exhibit No. 88                    178

 6   Meyer Deposition Exhibit No. 89                    180

 7   Meyer Deposition Exhibit No. 90                    184

 8   Meyer Deposition Exhibit No. 91                    188

 9   Meyer Deposition Exhibit No. 92                    193

10   Meyer Deposition Exhibit No. 93                    196

11   Meyer Deposition Exhibit No. 94                    198

12   Meyer Deposition Exhibit No. 95                    201

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      THE VIDEOGRAPHER:  We are now on the record.
2   Participants should be aware that this
3   proceeding is being recorded, and, as such, all
4   conversations held will be recorded unless there
5   is a request and agreement to go on or off the
6   record.  Private conversations or
7   attorney-client interactions should be held
8   outside the presence of the remote interface.
9   For the purpose of creating a witness-only video
10  recording, the witness is now being spotlighted
11  or locked on to the video screens while in
12  speaker view.  We ask that the witness not
13  remove the spotlight setting during the
14  deposition as it may cause other participants to
15  appear on the final video rather than just the
16  witness.  For anyone who doesn't want the
17  witness's video to take up the large part of
18  your screen, you may click the gallery view
19  button in the upper right-hand corner of the
20  remote depo interface.
21       This is the remote video recorded
22  deposition of Chad Meyer being taken by
23  plaintiff.  Today's date is July 27, 2021.  The
24  time now is 1400 universal coordinated time or
25  9:00 a.m. Eastern Time.  We are here in the

Chad Meyer
July 27, 2021                                                    6

1   matter of Chase Manufacturing vs. Johns Manville
2   Corporation.  My name is Charles Hodge, the
3   remote video technician, on behalf of U.S. Legal
4   Support at the U.S. Legal located at 200 West
5   Jackson, Chicago, Illinois.  I am not related to
6   any party in this action nor am I financially
7   interested in the outcome.  At this time will
8   the reporter, Laura -- whose name I did not
9   write down -- please swear in or affirm the
10  witness on behalf of U.S. Legal and please enter
11  the statement for remote proceedings into the
12  record.
13      THE COURT REPORTER:  The attorneys
14  participating in this deposition acknowledge
15  that I am not physically present in the
16  deposition room and that I will be reporting
17  this deposition remotely.  They further
18  acknowledge that, in lieu of an oath
19  administered in person, the witness will
20  verbally declare his testimony in this matter is
21  under penalty of perjury.  The parties and their
22  counsel consent to this arrangement and waive
23  any objections to this manner of reporting.
24  Please indicate your agreement by stating your
25  name and your agreement on the record.

1    MS. SHEAR:  Alex Shear.  I agree for the
2  plaintiff.  Thank you.
3    MS. KOSTECKA:  Allison Kostecka for Johns
4  Manville Corporation.  I agree as well.
5                    (Witness sworn.)
6                    CHAD MEYER,
7  called as a witness herein, having been first
8  duly sworn, was examined and testified as
9  follows:
10                    Examination
11                    By Ms. Shear
12    Q.   All right.  With that, we'll begin.
13  Mr. Meyer, I'm sure you caught this, but I am
14  Alex Shear.  I'm with a firm called Bona Law,
15  and we are representing the plaintiff, Thermal
16  Pipe Shields, in this litigation.  I don't know
17  if the other attorneys need to introduce
18  themselves.  I'm sure you've met Miss Kostecka,
19  Mr. Kerwin, and Mr. Zall.
20    A.   There was somebody that joined in late,
21  Luke.  I've never met Luke.  I don't know who
22  Luke is.
23    Q.   I didn't see Luke was on.  Luke
24  Hasskamp is my partner at Bona Law also
25  representing the plaintiff.

1    Paragraph 173 of the complaint.  The allegation
2    is that:  Finally Mr. Meyer continued to
3    disparage Thermal Pipe Shields CalSil to other
4    customers telling Mr. Guest of 4 State Supply at
5    the Midwest Insulation Contractor Association
6    trade show in October '18 that TPSX 12 was
7    Chinese and asking why the customer would want
8    to risk buying an unproven product that may not
9    meet specifications.
10            Did you tell Mr. Guest at the MICA
11   trade show, the fall MICA trade show, that TPS
12   CalSil was imported from China?
13        A.   I believe Mr. Guest already knew that
14   the product was imported from China.
15        Q.   All right.  Did you ask Mr. Guest why
16   he would want to risk buying an unproven
17   product?
18        A.   No.
19        Q.   Did you ask Mr. Guest why he would want
20   to risk buying a product that may not meet the
21   specifications?
22        A.   I may have.
23        Q.   Did you say to him that TPS CalSil does
24   not meet specifications?
25        A.   I did not.

1    Q.   Did you imply that TPS CalSil might not
2    meet specifications?
3    A.   I did not.
4    Q.   What was the purpose of asking
5    Mr. Guest why he would want to buy a product
6    that may not meet the specifications?
7         MS. KOSTECKA:  Objection.  Misstates prior
8    testimony.
9         THE WITNESS:  We had seen on a project in
10   Ohio some CalSil that came in with some
11   equipment from China and some racks where the
12   product did not meet the ASTM specification, and
13   the contractors had a very hard time installing
14   the product and elected, at that point, not to
15   use the product.  So my comment to Joe was make
16   sure that any product that you buy meets the
17   ASTM specifications.
18   BY MS. SHEAR:
19   Q.   All right.  Did -- you said that
20   Mr. Guest knew that John -- that TPS CalSil was
21   imported from China.  Did you suggest to him
22   that any CalSil imported from China might
23   include asbestos?
24   A.   I relayed a story that had been
25   circulated around the industry that in the past

1    there was a sample of CalSil that came in from
2    China that may have contained trace amounts of
3    asbestos.
4        Q.   What was the purpose of telling that
5    story?
6        A.   The purpose of telling that story was
7    the same purpose of advising him to make sure
8    that the product meets the ASTM specifications
9    and that was just know what you're buying and
10   make sure that it meets all of the U.S.
11   specifications.
12       Q.   Are you aware of any product other than
13   Johns Manville's and TPS's that meets the ASTM
14   specification for C533 Type 1?
15       A.   I believe there may be a product coming
16   out of Japan that meets the specification, but
17   I've not seen all the test reports, so I don't
18   know if they meet all of the specifications or
19   not.
20       Q.   All right.  And are you aware of any
21   other product imported from China that meets
22   those specifications?
23       A.   I have not seen any test reports from
24   other products from China, so I cannot comment
25   whether they would or would not meet any of the

```
 1    ASTM specifications for the United States.
 2         Q.   All right.  So -- all right.  So did
 3    you tell Mr. Guest at the MICA trade show or in
 4    the subsequent meeting on October 31st that
 5    Johns Manville has never sold products -- CalSil
 6    made in China?
 7         A.   No.  I did not tell that to Mr. Guest.
 8         Q.   What did you say to Mr. Guest about
 9    Johns Manville's history of importing CalSil
10    from China?
11         A.   Mr. Guest asked me if I was aware that
12    the TPS product supposedly was manufactured in a
13    facility that IIG -- so before Johns Manville --
14    imported product from.  And I told him I have no
15    idea if that was the facility that IIG used or
16    not and that I would have to check.
17         Q.   Did you check?
18         A.   I did.
19         Q.   And what did you learn?
20         A.   I think at the time the facility was
21    using a different name, but I believe it to be
22    the same facility.
23         Q.   And did you let Mr. Guest know that?
24         A.   I think it came up at that secondary
25    meeting, and then I let him know.
```

```
 1        Q.   All right.  When you are talking with
 2   customers, do you ever hear the customers make
 3   comments about Chinese materials?
 4        A.   At times.
 5        Q.   What are the nature of those comments?
 6        A.   Quite honestly, I don't remember any
 7   specific comments.
 8        Q.   Do you remember generally what concerns
 9   those comments reflect?
10        A.   Typical concerns that those comments
11   would reflect are whether or not imported
12   product would conform to the ASTM standards.
13   That's a big thing for contractors.  And the
14   second issue is whether or not there would be
15   any issues getting product on jobs.  Because
16   sometimes when you're on a project, there is a
17   timeframe where you have to install the
18   products.  And if you do not meet that
19   timeframe, the contractors may owe financial
20   penalties to -- I don't know if it's the owner,
21   I don't know if it's the EMC.  I'm not sure who
22   in the chain they would owe the financial
23   penalties to, but that's typically what I am
24   hearing in the market.
25        Q.   All right.  And do you hear comments
```

1   that reflect concerns about quality of imported
2   products?
3       A.   Again, I believe the concerns would be
4   whether or not the products meet the AST -- the
5   appropriate ASTM standards, and I believe in
6   that context that would encompass quality in
7   those concerns.
8       Q.   Would that encompass asbestos content?
9       A.   I think that would encompass anything
10  that has to do with quality.
11      Q.   Okay.
12      A.   We have been going for a little over an
13  hour.  Can we take a restroom break?
14      Q.   Yes, of course.
15      THE VIDEOGRAPHER:  Everyone, it sounds like
16  you're agreeing, so we are going off the record
17  at 1:22 p.m.
18                  (Short break taken.)
19      THE VIDEOGRAPHER:  This is the beginning of
20  Clip No. 4.  We are back on the record at 1:34
21  p.m.  Please proceed.
22  BY MS. SHEAR:
23      Q.   Thank you.  Welcome back from the
24  break.  Mr. Meyer, you just before the break
25  testified that you did not tell Mr. Guest that

```
 1   STATE OF ILLINOIS  )
                        )  SS.
 2   COUNTY OF COOK     )

 3

 4              I, LAURA MUKAHIRN, Certified

 5   Shorthand Reporter and Notary Public in and for

 6   the County of Cook, State of Illinois, do hereby

 7   certify that on July 27, 2021, the deposition of

 8   the witness, CHAD MEYER, called by the

 9   Plaintiff, was taken before me, reported

10   stenographically, and was thereafter reduced to

11   typewriting under my direction.

12              The said deposition was taken

13   remotely, and there were present counsel as

14   previously set forth.

15              The said witness, CHAD MEYER, was

16   first duly sworn to tell the truth, the whole

17   truth, and nothing but the truth, and was then

18   examined upon oral interrogatories.

19              I further certify that the foregoing

20   is a true, accurate, and complete record of the

21   questions asked of and answers made by the said

22   witness, CHAD MEYER, at the time and place

23   hereinabove referred to.

24              The undersigned is not interested in

25   the within case, nor of kin or counsel to any of
```

Chad Meyer
July 27, 2021                                                         228

1    the parties.
2              Witness my official signature and
3    seal as Notary Public, in and for the County of
4    Cook, State of Illinois, on this 2nd day of
5    August A.D., 2021.
6
7
8
9           *Laura Mukahirn* (signature)
10   _____
     LAURA MUKAHIRN, CSR, RPR, CRR
11   CSR NO. 084-003592
12
13
14
15
16
17
18
19
20
21
22
23
24
25