UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 19-cv-00872-MEH

CHASE MANUFACTURING, INC. d/b/a THERMAL PIPE SHIELDS,

     Plaintiff,

v.

JOHNS MANVILLE CORPORATION,

     Defendant.

---

**OPENING JURY INSTRUCTIONS**

---

**INSTRUCTION NO. 1**

<u>Jury Conduct</u>

We are about to start the trial of the case you heard about during jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself. These are preliminary instructions about jury conduct and the law. These may not be exactly the same as the final instructions about the law you will be given at the end of the case to use in your deliberations. If there is any difference between the preliminary and final instructions, you must follow and be governed by the final instructions in deciding the case. You should not be concerned about any difference between the preliminary instructions and the final instructions.

Your job will be to decide this case based solely on the evidence presented during the trial and the instructions that I will give you. You will not be investigators or researchers, so do not attempt to gather any information about this case on your own.

Do not talk with *one another* about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Do not talk with *anyone else* about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. This includes the lawyers in this matter. "Anyone else" also includes members of your family and your friends, whether in person or by telephone, cell phone, smart phone, computer, Internet, or other means of communication. You will receive a juror badge so when you are in the courthouse people will know you are a juror. Do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone tries to talk to you, please report it to me immediately.

When Court is not in session, you may communicate about anything other than this case. You may tell others that you are a juror in a case and that I have ordered you not to tell them anything else about the case until I have discharged you. You may tell them the estimated schedule of your jury duty, but do not tell them anything else about the case. If anyone tries to communicate with you about anything concerning the case, you must stop the communication immediately and report it to my Courtroom Deputy who will notify me.

Do not read or do research about the trial, the case, the issues in this case, or anyone who has anything to do with the case from any other source or electronic tool, including the Internet; podcasts or television or radio broadcasts; newspapers, magazines, or any other publications; consulting dictionaries; religious books or materials; law books; or other reference materials. Please do not try to find out information from any source outside the confines of this courtroom.

I hope that for all of you this case is interesting and noteworthy. I know that many of you use cell phones, smart watches, tablets, the Internet, and other forms of technology. You may have your smart watch turned on when Court is in session or while you are deliberating only if it is in

airplane mode or otherwise disconnected from receiving news alerts and phone calls or texts. You may not, under any circumstances, have your smart phones, tablets, or other electronic devices turned on when Court is in session or while you are deliberating. Additionally, you must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes communication through e-mail, text messaging, X (formerly known as "Twitter"), Instagram, TikTok, Facebook, or by way of any other social networking websites. Researching or gathering any information on your own that you think might be helpful is against the law and would violate your oath.

Violation of this instruction could cause a mistrial, meaning all of our efforts over the course of the trial would be wasted and we would have to start over again before a new jury. If you were to cause a mistrial by violating this order, you could be required to pay the costs of these proceedings, and you could also be punished for contempt of court.

Do not make up your mind about what the verdict should be until after you have retired to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then. If you need to tell me something, simply give a signed note to my Courtroom Deputy to give to me.

Finally, each of you will be given a notebook. Please write your name on your notebook. You are free to take notes to enhance your memory or assist you in recollecting during your deliberations. However, you are not required to do so. Let me advise you of certain things concerning notetaking:

1.      Each of you may take notes, but you are not required to do so.

2.      If you take notes, do not try to summarize all of the testimony. Notes are for the purpose of refreshing your memory. Whether you take notes or not, you should rely on your memory as much as possible and not upon your notes or the notes of other jurors.

3.      Be brief in taking notes. Over-indulgence in notetaking may be distracting. You, the jurors, must determine the credibility of witnesses; hence, you must observe the demeanor and appearance of each person on the witness stand to assist you in passing on his or her credibility. Notetaking must not distract you from that task. If you wish to take notes, you need not sacrifice the opportunity to make important observations.

4.      Your notes are for your private use only. Do not use your notes, or other jurors' notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the view of a fellow juror because that juror did or did not take notes. Your notes are not official transcripts. You are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

5.      You may only use your notes in the courtroom or jury deliberation room. However, these materials may not be taken anywhere else. At the end of each day, please leave your notebook in the jury deliberation room. The jury deliberation room will be locked by my Courtroom Deputy at the conclusion of each day when you leave, and unlocked before you arrive and proceedings begin in the morning. At the conclusion of the case, a court officer will collect and destroy your notes to protect the secrecy of your deliberations.

## INSTRUCTION NO. 2

<u>Case Presentation</u>

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. As I previously stated, the party who sues is called the "Plaintiff." In this action, the Plaintiff is Chase Manufacturing, Inc., which does business as Thermal Pipe Shields and is referred to as "TPS." The individual or entity the Plaintiff sues is called the "Defendant." In this case, the Defendant is Johns Manville Corporation and is referred to as "JM."

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining credibility or believability of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

From time to time during the trial, I may make rulings on objections or motions the lawyers make. All rulings I am required to make will be based solely on the law. It is a party's duty to object when the other side offers testimony or other evidence that the party believes is inadmissible. You should not be unfair or partial against a lawyer or the lawyer's client, because

the party has made objections. If I sustain an objection to any evidence or strike any evidence, you must disregard that evidence. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. If I sustain or uphold an objection to a question that has been answered, you must not draw any inferences or conclusions from the answer. If I overrule an objection to any evidence, you must not give that evidence any more weight than if the objection had not been made. You should not infer or conclude from any ruling or other comment I make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

When I "sustain" an objection or "strike" evidence, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say, "admitted into evidence" or "received into evidence," I mean that this particular statement or exhibit may be considered by you in making the decisions you must make at the end of the case.

During recesses and adjournments of Court, you will be free to separate, eat lunch, and go home at the end of the day. During these times, you are not to discuss this case with one another or anyone else.

The lawyers and parties are not allowed to speak with you during this case. When you see them at recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law. Similarly, you must not talk with any of the witnesses in this case or representatives of the media until after you have reached your verdict and have been discharged by the Court as jurors in this case. Additionally, while the trial is in progress,

you must not discuss the case in any manner among yourselves or with anyone else. Neither should you permit anyone to discuss the case in your presence.

During the trial, it may be necessary for me to talk with the parties out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. This may cause delay. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

## INSTRUCTION NO. 3

### Burden of Proof

"Burden of proof" means the obligation a party has to prove their claims. The party with the burden of proof can use evidence produced by any party to persuade you. Plaintiff, Chase Manufacturing, Inc., which does business as Thermal Pipe Shields and is known as "TPS," has the burden of proof in this civil action, which requires it to prove every essential element of its claim by a preponderance of the evidence.

"Establish by a preponderance of the evidence" means evidence which, as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your mind's belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If Plaintiff fails to meet its burden of proof as to any claim, or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must reject that claim.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

**INSTRUCTION NO. 4**

<u>Lawsuit Does Not Mean Valid Claim</u>

The fact that a plaintiff files a lawsuit is not evidence that the other party did anything wrong. The fact that Plaintiff complains that it has been damaged is not evidence that it has been damaged or that the other party violated the law. The fact that a case has gone to trial does not mean that it must have some merit. You cannot say, "Well, there must be something wrong here or the case would not be in Court." That would be improper.

**INSTRUCTION NO. 5**

Evidence in the Case

It will be your duty to decide what the facts are from the evidence the parties present. You, and you alone, are the judges of the facts. You will hear the evidence, decide what the facts are, and then apply those facts to the law I give you. That is how you will reach your verdict. In doing so, you must follow the law as I inform you, whether you agree with it or not.

At no time during the trial will I suggest what I think your verdict should be, nor do I want you to guess or speculate about my views of what verdict you should render.

The evidence in the case will consist of the following:

1.      The sworn testimony of the witnesses, no matter which party calls the witness.

2.      All exhibits received in evidence, regardless of which party produces the exhibits.

3.      All facts that have been stipulated or judicially noticed, which you must take as true for purposes of this case.

A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved. Questions and objections by the lawyers are not evidence. Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by an objection or by my ruling on it.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

The following things are **<u>not</u>** evidence, and you must not consider them as evidence in deciding the facts of this case:

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact. If a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact. The lawyer's questions and statements are not evidence.

Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and you must not consider it. In addition, I may allow some testimony or exhibits only for a limited purpose, and you must consider such only for that limited purpose.

Anything you may see or hear when the Court is not in session is not evidence, even if what you see or hear is done or said by one of the parties or witnesses. You are to decide the case solely on the evidence received in this courtroom during the trial.

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience. "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult. I urge you to pay close attention to the testimony as it is given.

**INSTRUCTION NO. 6**

<u>Direct and Circumstantial Evidence</u>

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness who asserts or claims to have actual knowledge of a fact. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts and circumstances which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved. By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence of this case.

**INSTRUCTION NO. 7**

<u>Exhibits</u>

The lawyers may highlight certain parts of some exhibits. It is for you to determine the significance of the highlighted parts.

**INSTRUCTION NO. 8**

<u>Credibility of Witnesses</u>

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence; motive and state of mind; bias, prejudice, or interest, if any; and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is consistent or inconsistent, reasonable or unreasonable, or supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**INSTRUCTION NO. 9**

<u>All Available Witnesses or Evidence Need Not be Produced</u>

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

**INSTRUCTION NO. 10**

<u>Expert Testimony</u>

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by knowledge, skill, education, training, or experience has become expert in some art, science, profession, or calling. Expert witnesses state their opinions as to matters in which they profess to be an expert and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel that the expert's opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**INSTRUCTION NO. 11**

<u>Speculation</u>

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

**INSTRUCTION NO. 12**

<u>Sympathy</u>

You must not be influenced by sympathy, bias, or prejudice for or against any party in this case.

**INSTRUCTION NO. 13**

<u>Impeachment—Inconsistent Statement or Conduct</u>

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done if the act is done voluntarily and intentionally, and not because of mistake, accident, or other innocent reason.

**INSTRUCTION NO. 14**

<u>Relevance and Use of Impeachment</u>

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

However, where the witness is the agent or employee of a party to the case, makes a statement on a matter within the scope of that relationship and while it existed, and by such statement or other conduct admits some fact or facts against the party's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party.

**INSTRUCTION NO. 15**

<u>Objections and Rulings</u>

Testimony and exhibits can be admitted into evidence during a trial only if they meet certain criteria or standards. It is the duty of the lawyer on each side of a case to object when the other side offers testimony or an exhibit that the lawyer believes is not properly admissible under the rules of law. Only by offering an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence being offered by the other side. You should not be influenced against any lawyer or the lawyer's client because the lawyer has made objections.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question.

**INSTRUCTION NO. 16**

<u>Province of Judge and Jury</u>

After you have heard all the evidence, the parties have presented their arguments, and I have read you the instructions, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you are required to accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each witness.

In addition, during the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.

## INSTRUCTION NO. 17

<u>Order of Trial</u>

The trial will begin after lunch. First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence but is simply an outline to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, Plaintiff will present evidence in support of its claim and Defendant's lawyer may cross-examine the witnesses. At the conclusion of Plaintiff's case, Defendant may introduce evidence, and Plaintiff's lawyer may cross-examine the witnesses. Because some of Defendant's witnesses are the same as Plaintiff's witnesses, Defendant may directly examine Plaintiff's witnesses during Plaintiff's case. You are to treat this testimony as if Defendant had offered it after the conclusion of Plaintiff's case. Defendant is not required to introduce any evidence or call any witnesses. If Defendant introduces evidence, Plaintiff may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown. Plaintiff's lawyer will present first, and Defendant's lawyer will follow. Plaintiff's lawyer may respond to any statements made by Defendant's lawyer. What the lawyers say in the closing arguments is not evidence. Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 19-cv-00872-MEH

CHASE MANUFACTURING, INC. d/b/a THERMAL PIPE SHIELDS,

Plaintiff,

v.

JOHNS MANVILLE CORPORATION,

Defendant.

---

**CLOSING JURY INSTRUCTIONS**

---

**INSTRUCTION NO. 18**

<u>Introduction to Closing Instructions</u>

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law. Instead, consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and the law as stated in these instructions, you must follow my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, bias, prejudice, or public opinion. All parties

expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**INSTRUCTION NO. 19**

<u>Use of Notes</u>

You may use the notes you took during the trial. Your notes should be used only as aids to your memory, and if your memory should later be different, you should rely on your memory and not your notes.

**INSTRUCTION NO. 20**

<u>Burden of Proof</u>

"Burden of proof" means the obligation a party has to prove its claims. This is a civil case. Therefore, Plaintiff has the burden of proving its claim by what is called "a preponderance of the evidence." That means that no matter who produces the evidence, when you consider Plaintiff's claim in light of all the facts, you believe that its claim is more likely true than not true. To put it differently, if you were to put Plaintiff's and Defendant's evidence on opposite sides of the scales, Plaintiff would have to make the scale tip on its side. If Plaintiff fails to meet this burden on its claim, your verdict must be for Defendant on the claim.

**INSTRUCTION NO. 21**

<u>Probabilities and Evidence</u>

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

Evidence may be either direct or circumstantial. Circumstantial evidence is the proof of facts or circumstances from which the existence or nonexistence of other facts may reasonably be inferred. "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case. All other evidence is direct evidence. The law makes no distinction between the effect of direct evidence and circumstantial evidence.

**INSTRUCTION NO. 22**

<u>Evidence in the Case</u>

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that have been stipulated to or judicially noticed.

The lawyers have highlighted certain parts of some exhibits. However, it is for you to determine the significance of the highlighted parts.

Statements, objections, and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded. In addition, if I have allowed some testimony or exhibits only for a limited purpose, you must consider such only for that limited purpose.

Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received during trial.

**INSTRUCTION NO. 23**

<u>Credibility of Witnesses</u>

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the consistency or lack of consistency in the witness' testimony; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend on the number of witnesses who testify.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel that the expert's opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**INSTRUCTION NO. 24**

<u>The Parties' Corporate Status</u>

Plaintiff, Chase Manufacturing, Inc., which does business as Thermal Pipe Shields, and Defendant, Johns Manville Corporation, are corporations and can act only through their officers and employees. Any act or omission of an officer or employee while acting within the scope of employment is the act or omission of the corporation. Likewise, each corporate party is considered to know or have notice of information if any of its officers and employees, while acting within the scope of their authority, learns or receives notice of the information.

**INSTRUCTION NO. 25**

<u>All Persons Equal Before the Law - Organizations</u>

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations, stand equal before the law and are to be treated as equals.

**INSTRUCTION NO. 26**

Statement of the Case

The parties to this case are Chase Manufacturing, Inc., which does business as Thermal Pipe Shields and is referred to as "TPS," the Plaintiff, and Johns Manville Corporation, which is referred to as "JM," the Defendant.

This is a case about the sale of calcium silicate, also known as "calsil," which is used to insulate extremely hot pipes in industrial facilities. For several years prior to 2018, JM was the sole domestic manufacturer of calsil, but in March 2018, TPS also began selling calsil in the U.S.

TPS asserts it was injured by JM's unlawful monopolization of the U.S. calsil market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. It contends JM willfully maintained monopoly power in that market through anticompetitive threats to withhold JM's products from its distributors if such distributors did business with TPS, which substantially foreclosed TPS from that market and impeded TPS's market growth.

JM denies TPS's claim and asserts it does not have a monopoly or monopoly power in the relevant market, which it contends includes alternative insulation materials besides calsil. JM maintains it did not make anticompetitive threats or require distributors to work exclusively with it. JM asserts it has earned its success through customer service, fair competition, and expending considerable resources marketing its materials.

This is the issue you are to decide.

10

**INSTRUCTION NO. 27**

<u>Stipulated Fact</u>

At the outset of the case, the parties stipulated to the following fact:

Calsil is one type of insulation material used to insulate piping, tanks, and other mechanical equipment that operate at temperatures up to 1200° Fahrenheit, usually in large industrial facilities like oil refineries, chemical and power generation plants, and/or pulp and paper mills.

Since the parties have stipulated to this fact and do not dispute it, you are to take this fact as true for purposes of this case.

**INSTRUCTION NO. 28**

<u>Introduction to Causes of Action</u>

TPS sues JM on one claim for relief: Section 2 monopolization under the Sherman Act, 15 U.S.C. § 2.

In determining liability, TPS's claim is based on alleged anticompetitive threats occurring between March 8, 2018 and June 30, 2020. It would be improper for you to speculate or infer whether JM made any anticompetitive threats outside this time period. Any such conduct would be irrelevant and outside the scope of this case.

**INSTRUCTION NO. 29**

<u>The Purpose of the Sherman Act</u>

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

**INSTRUCTION NO. 30**

Monopolization Elements

TPS alleges that it was injured by JM's unlawful monopolization of the U.S. sale of calsil. To prevail, TPS must prove each of the following elements by a preponderance of the evidence:

(1) TPS's alleged market for the U.S. sale of calsil is a relevant antitrust market;

(2) JM possessed monopoly power in that market;

(3) JM willfully maintained monopoly power in that market through anticompetitive threats to withhold JM's products from its distributors if such distributors did business with TPS, which substantially foreclosed TPS from that market and impeded TPS's market growth; and

(4) TPS was injured in its business or property because of JM's anticompetitive threats.

If you find that TPS has failed to prove any of these elements, then you must find for JM and against TPS. If you find that TPS has proved each of these elements by a preponderance of the evidence, then you must find for TPS against JM.

**INSTRUCTION NO. 31**

<u>Monopoly Power Defined</u>

To prove its monopolization claim, TPS must prove that JM has monopoly power in a relevant antitrust market. Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether TPS has met its burden of proving monopoly power in a relevant market.

**INSTRUCTION NO. 32**

<u>Relevant Market—General</u>

TPS must prove by a preponderance of the evidence that JM had monopoly power in a relevant market. Defining the relevant market is essential because you are required to make a judgment about whether JM has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain JM's freedom to set prices for or to restrict the production level of calsil.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on JM's power to set prices as it pleases because customers could switch to them if JM sets its own prices too high. All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether TPS has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market. The second is the relevant geographic market.

16

## INSTRUCTION NO. 33

<u>Relevant Product Market</u>

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, plastic wrap, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a five percent increase in price not due to cost factors but you may conclude in this case that some other percentage is more applicable to the product at issue. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of TPS and JM regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

In this case, TPS contends that the relevant product market is calsil. JM contends that TPS's proposed calsil-only market is too narrow and does not encompass competing types of high-temperature industrial insulation. If you find that TPS has proven a relevant product market, then you should continue to evaluate the remainder of TPS's claim. However, if you find that TPS has failed to prove such a market, then you must find in JM's favor.

## INSTRUCTION NO. 34

<u>Relevant Geographic Market</u>

The relevant geographic market is the area in which JM faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

TPS has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, TPS claims that the relevant geographic market is the United States. By contrast, JM asserts that the relevant geographic markets are local and regional markets. In determining whether TPS met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- the geographic area in which JM sells and where JM's customers are located;

- the geographic area to which customers turn for supply of the product;

- the geographic area to which customers have turned or have seriously considered turning;

- the transportation cost differences between areas;

- the geographic areas that suppliers view as potential sources of competition; and

- whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

## INSTRUCTION NO. 35

<u>Existence of Monopoly Power—Proof</u>

If you find that TPS has proven a relevant market, then you should determine whether JM has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

There are two methods of proving monopoly power in a relevant market, either of which alone is sufficient.

1. **First Method**:

a.    Under the first method: TPS has the burden of proving that JM has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. TPS must prove that JM has the power to do so by itself—that is, without the assistance of, and despite competition from, any existing or potential competitors.

b.    TPS must also prove that JM has the power to maintain prices above a competitive level for a significant period of time. If JM attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then JM does not have monopoly power.

c.    Similarly, TPS must prove that JM has the ability to exclude competition. For example, if JM attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then JM does not have monopoly power.

As to the first method, the ability to earn high profit margins or a high rate of return does not necessarily mean that JM has monopoly power. Other factors may enable a company without

monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, or superior advertising or marketing. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that JM would lose a substantial amount of sales if it raised prices substantially, or that JM's profit margins were low compared to its competitors, or that JM's margins go up and down or are steadily decreasing, might be evidence that JM does not have monopoly power.

### 2. <u>Second Method</u>:

Under the second method, TPS can prove monopoly power in a relevant market based on the structure of the market. The evidence presented by the parties includes evidence of JM's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors. If this evidence establishes that JM has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that JM has monopoly power in the market.

**Market Share**

The first factor that you should consider is JM's share of the relevant market. Based on the evidence that you have heard about JM's market share, you should determine JM's market share as a percentage of total sales in the relevant market. JM must have a significant share of the market in order to possess monopoly power.

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with JM for sales), the entry and exit by other companies, and the number

and size of competitors. Along with JM's market share, these factors should inform you as to whether JM has monopoly power. The higher the company's share, the higher the likelihood that a company has monopoly power.

A market share below fifty percent is ordinarily not sufficient to support a conclusion that JM has monopoly power. However, if you find that the other evidence demonstrates that JM does, in fact, have monopoly power despite having a market share below fifty percent, you may conclude that JM has monopoly power.

**Market Share Trends**

The trend in JM's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), the large financial investment required to build a plant or satisfy governmental regulations, specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that JM does not have monopoly power, regardless of JM's market share, because new competitors could enter easily if JM attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that JM has monopoly power.

**Entry and Exit by Other Companies**

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that JM lacks monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that JM has monopoly power.

**Number and Size of Competitors**

You may consider whether JM's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares, and number of competitors act as a check on JM's ability to price its products. If JM's competitors are vigorous or have large or increasing market shares this may be evidence that JM lacks monopoly power. On the other hand, if you determine that JM's competitors are weak or have small or declining market shares, this may support an inference that JM has monopoly power.

**Conclusion**

If you find that JM has monopoly power in the relevant market, then you must consider the remaining elements. If you find that JM does not have monopoly power, then you must find for JM and against TPS.

## INSTRUCTION NO. 36

<u>Willful Maintenance of Monopoly Power Through Anticompetitive Threats</u>

The next element TPS must prove is that JM willfully maintained monopoly power through anticompetitive threats to withhold JM's products from its distributors if such distributors did business with TPS.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, is not unlawful. Similarly, willful maintenance of monopoly power is not satisfied if a company has maintained monopoly power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or consumer preference have driven out all but one supplier. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive conduct.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

Anticompetitive threats are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for

24

customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

In determining whether JM's threats were anticompetitive or whether they were legitimate business conduct, you should determine whether the threats are consistent with competition on the merits, whether the threats provide benefits to consumers, and whether the threats would make business sense apart from any effect they have on excluding competition or harming competitors.

You may consider the nature and history of the use of threats in the market, whether the buyers had independent reasons not to purchase from TPS or were coerced into not doing so, JM's position in the marketplace, the competitive alternatives to JM's products or services, the effect of the threats on the ability of new firms to enter the market and on price and other competition in the market, and whether the threats involved false and disparaging statements about TPS or its products. You may also consider whether the buyer is the final end user of the product. If the buyer is the final end user, the threat forecloses competitors from that portion of the market represented by the buyer's purchases and makes it more likely that competition may be harmed if the buyer represents a substantial portion of the market. On the other hand, if the buyer is a distributor or reseller, and there are other alternatives for competing sellers to market their products to end users, then a threat may not foreclose competitors' access to the market and, thus, not substantially harm competition.

For JM's threats to be anticompetitive, they must have represented something more than the conduct of business that is part of the normal competitive process or commercial success. The threats did not need to totally exclude TPS from the market. Rather, the question is whether the

threats substantially foreclosed TPS from the market and impeded TPS's market growth. In determining whether JM's threats substantially foreclosed TPS from the market and impeded TPS's market growth, it is relevant to consider the percentage of the market foreclosed and the length of the foreclosure. Where the threats foreclose less than twenty percent of the market, this indicates that the harm from the foreclosure of competition is not substantial because there are alternatives available. Similarly, the shorter the duration of the foreclosure, the less likely it is to harm competition. The longer the duration of the foreclosure, the more likely that the harm to competition will be greater.

If you find that TPS has proven by a preponderance of the evidence that JM willfully maintained monopoly power through anticompetitive threats to withhold JM's products from its distributors if such distributors did business with TPS, which substantially foreclosed TPS from that market and impeded TPS's market growth, then you must consider whether TPS has proved the remaining elements. If, however, you find that TPS did not prove this element by a preponderance of the evidence, then you must find for JM and against TPS.

## INSTRUCTION NO. 37

<u>Injury and Causation</u>

If you find that JM has engaged in unlawful monopolization, then you must decide if TPS is entitled to recover damages from JM.

TPS is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1) TPS was in fact injured as a result of JM's alleged unlawful monopolization;

(2) JM's alleged anticompetitive threats were a material cause of TPS's injury; and

(3) TPS's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For TPS to establish that it is entitled to recover damages, it must prove that it was injured as a result of JM's alleged unlawful monopolization. Proving the fact of damage does not require TPS to prove the dollar value of its injury. It requires only that TPS prove that it was in fact injured by JM's alleged unlawful monopolization. If you find that TPS has established that it was in fact injured, you may then consider the amount of TPS's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that TPS has established that it was in fact injured.

TPS must also offer evidence that establishes by a preponderance of the evidence that JM's alleged anticompetitive threats was a material cause of TPS's injury. This means that TPS must have proved that some damage occurred to it as a result of JM's alleged unlawful monopolization, and not some other cause. TPS is not required to prove that JM's alleged unlawful monopolization was the sole cause of its injury; nor need TPS eliminate all other possible causes of injury. It is

enough if TPS has proved that the alleged unlawful monopolization was a material cause of its injury.

Finally, TPS must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If TPS's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then TPS's injuries are antitrust injuries. On the other hand, if TPS's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then TPS's injuries are not antitrust injuries and TPS may not recover damages for those injuries under the antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The antitrust laws do not permit TPS to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if TPS can establish that it was in fact injured by JM's anticompetitive threats, that JM's anticompetitive threats were a material cause of TPS's injury, and that TPS's injury was the type that the antitrust laws were intended to prevent, then TPS is entitled to recover damages for the injury to its business or property.

**INSTRUCTION NO. 38**

<u>Business or Property</u>

TPS must establish that the injury it claims to have suffered was an injury to its business or property. The term "business" includes any commercial interest or venture. TPS has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of JM's alleged unlawful monopolization. The term "property" includes anything of value TPS owns, possesses, or in which TPS has a protectable legal interest. TPS has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of JM's alleged unlawful monopolization. TPS has been injured in its property if you find that it has lost money as a result of JM's alleged unlawful monopolization.

## INSTRUCTION NO. 39

Antitrust Damages—Introduction and Purpose

If you find that JM violated the antitrust laws through unlawful monopolization and that this violation caused injury to TPS, then you must determine the amount of damages, if any, TPS is entitled to recover. The fact that I am giving you instructions concerning the issue of TPS's damages does not mean that I believe TPS should, or should not, prevail in this case. If you reach a verdict for JM on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that TPS should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged unlawful monopolization not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to TPS an amount for attorneys' fees or the costs of maintaining this lawsuit.

**INSTRUCTION NO. 40**

Basis for Calculating Damages

You are permitted to make just and reasonable estimates in calculating TPS's damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. TPS must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that TPS has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that TPS has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

## INSTRUCTION NO. 41

Causation and Disaggregation

If you find that JM violated the antitrust laws and that TPS was injured by that violation, TPS is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of JM. TPS bears the burden of showing that its injuries were caused by JM's unlawful monopolization, as opposed to any other factors. If you find that TPS's alleged injuries were caused in part by JM's unlawful monopolization and in part by other factors, then you may award damages only for that portion of TPS's alleged injuries that was caused by JM's unlawful monopolization.

TPS claims that it suffered injury because it lost sales and profits as a result of JM's unlawful monopolization. JM claims that any profits or sales lost by TPS occurred as a result of other factors that have nothing to do with the alleged unlawful monopolization. JM alleges these include TPS's own decisions and actions, such as the distributors it chose to work with, the closure in early 2021 of the factory in China that supplied its calsil, and losing sales in the normal course of competitive business activity. TPS is not entitled to recover for lost profits that resulted solely from these or other causes arising from the normal course of business activity. The presence of these factors does not mean TPS did not suffer antitrust injury, but TPS is not entitled to recovery for damages caused by them. TPS may only recover for damages caused by the alleged unlawful monopolization.

TPS bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that TPS was injured by JM's alleged unlawful monopolization, and there is a reasonable basis to apportion TPS's alleged injury between lawful and unlawful causes, then you may award damages.

If you find that there is no reasonable basis to apportion TPS's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

**INSTRUCTION NO. 42**

<u>Damages for Competitors—Lost Profits</u>

TPS claims that it was harmed because it lost profits as a result of JM's alleged unlawful monopolization. If you find that JM engaged in unlawful monopolization and that this violation caused injury to TPS, you now must calculate the profits, if any, that TPS lost as a result of JM's conduct. To calculate lost profits, you must calculate net profit: the amount by which TPS's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

## INSTRUCTION NO. 43

Mitigation of Damages

TPS may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. TPS is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If TPS failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to TPS than it would have suffered had it taken those steps, then TPS may not recover any damages for that part of the injury it could have avoided.

JM has the burden of proof on this issue. JM must prove by a preponderance of the evidence that TPS:

(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2) that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

(3) the amount by which TPS's loss would have been reduced had TPS taken those steps.

In determining whether TPS failed to take reasonable measures to limit its damages, you must remember that the law does not require TPS to take every conceivable step that might reduce its damages. The evidence must show that TPS failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in TPS's position would likely have adopted, given the circumstances as they appeared at that time. TPS should be given wide latitude in deciding how to handle the situation, so long as what TPS did was not unreasonable in light of the existing circumstances.

**INSTRUCTION NO. 44**

<u>Difficulty in Determining Damages</u>

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence.

## INSTRUCTION NO. 45

<u>Duty to Deliberate</u>

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. During your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. However, do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**INSTRUCTION NO. 46**

<u>Exhibits and Jury Room</u>

The original forms of the written instructions and the exhibits are a part of the Court's record. Do not place any marks or notes on them. (The instructions labeled "copy" may be marked or used in any way you see fit.)

## INSTRUCTION NO. 47

<u>Election of Foreperson</u>

When you go to the jury room, you must first select a foreperson. The foreperson will preside over your discussions and speak for you here in Court. It is the responsibility of the foreperson to encourage good communication and participation by all jurors and to maintain fairness and order. Your foreperson should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

The foreperson should let each of you speak and be heard before expressing his or her own views.

The foreperson should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

The foreperson should make certain that the deliberations are not rushed to reach a conclusion.

If the foreperson you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a foreperson, you should consider electing a secretary who will tally the votes, help keep track of who has or has not spoken on the various issues, make certain that all of you are present whenever deliberations are under way, and otherwise assist the foreperson.

Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand." It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on; otherwise, you might lock yourself into a certain view before considering alternative, and possibly more reasonable, interpretations of the evidence. Experience

has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the foreperson begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed. These rules should assure that you will focus on, analyze, and evaluate the evidence fairly and efficiently and that the viewpoints of each of you are heard and considered before any decisions are made. No one should be ignored. You may agree to discuss the case in the order of the questions presented in the Jury Special Verdict Form, in chronological order, or according to the testimony of each witness. Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it. You should then continue through each issue in the order on which you have agreed unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes are taken by secret ballot. This will help you focus on the issues and not be overly influenced by personalities. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and, therefore, should treat each other with respect. Any differences in your views should be discussed calmly and, if a break is needed for that purpose, it should be taken. Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of you is going on and on, it is the

foreperson who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some of the issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the foreperson should set out the items on which you agree and those on which you have not yet reached agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision-making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision. Such a belief is not helpful. It can lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times, slower is usually faster. There is a tendency to set deadlines and seek to force decisions. Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences. With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

## INSTRUCTION NO. 48

Use of Electronic Communication Technologies

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, smart watch, computer, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Instagram, TikTok, Facebook, LinkedIn, YouTube, or X (formerly known as "Twitter"), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can discuss the case only in the jury room with your fellow jurors during deliberations. I expect you will inform me if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case, because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are permitted to discuss the case with your fellow jurors during deliberations, only because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you, and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

## INSTRUCTION NO. 49

### Communications with Court

If you need to communicate with me during your deliberations, you may send a note to me through Mr. Thompson, my courtroom deputy, signed by your foreperson. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open court. I will respond as soon as possible either in writing or orally in open court. Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

From the oath about to be taken by my courtroom deputy you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort. Before giving an answer or direction, I must first notify counsel and bring them back to the courtroom. I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be a question that, under the law, I am not permitted to answer. If it is improper for me to answer the question, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances, jurors request that certain testimony be read to them. This cannot be done as it is inappropriate for the Court to single out testimony. In those circumstances you must rely on your own recollections.

## INSTRUCTION NO. 50

<u>Reaching a Verdict</u>

It is your duty to find the facts from all the evidence in the case. To those facts, you must apply and follow the law as I give it to you whether you agree with it or not. You must base your verdict on the evidence. You are not allowed to do any research of any kind about this case, including looking at, reading, consulting, or using any material of any kind such as newspapers, magazines, television and radio broadcasts, dictionaries, medical, scientific, technical, religious, or law books or materials. You are not allowed to visit any place mentioned in the evidence. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means you must decide the case solely on the evidence before you and according to the law as I give it to you. You have taken an oath promising to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions, or into anything I may say or do, any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide.

Your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

**INSTRUCTION NO. 51**

<u>Jury Special Verdict Form</u>

You will receive a document called a Jury Special Verdict Form. The Jury Special Verdict Form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise my courtroom deputy that you are ready to return to the courtroom.

You are instructed to answer the questions in the Jury Special Verdict Form as directed in that form. You must reach unanimous agreement on the answers to each of the questions you are directed in the form to answer. On arriving at an agreement, your foreperson will insert each answer on the Jury Special Verdict Form, then your foreperson will date the Jury Special Verdict Form, sign it, and ask all of the other jurors to sign it.

Each of the questions calls for a "Yes" or "No" answer or a monetary value. The response to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question.

After you have filled out the Jury Special Verdict Form in this manner, your foreperson should advise my courtroom deputy stationed outside the jury room that you have reached a verdict.